**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MICHELLE MARSKI,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 19-cv-04132** |
| ) | |
| ) | |
| **COURIER EXPRESS ONE, INC.,** ) | |
| **PRECC, INC., PREMIER CC LLC, A** ) | **Hon. Judge John Robert Blakey** |
| **QUALTEK COMPANY, VERTEK, LLC,** ) | |
| **DISPATCH EXPRESS INC. and ANTHONY** ) | |
| **URSO.** ) | **TRIAL BY JURY DEMANDED** |
| ) | |
| **Defendants.** ) | |

**AMENDED COMPLAINT**

Plaintiff, Michelle Marski, states:

**NATURE OF PROCEEDING**

This is an action under 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.*, the Illinois Human Rights Act, 775 ILCS §5/2-101 *et seq.*, the Age Discrimination in Employment Act, 29 U.S.C. §621 *et. seq.*, the Family and Medical Leave Act, 29 U.S.C. §2601 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1166, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et. seq.*, Illinois's Minimum Wage Law, 820 ILCS 105/1 *et. seq.*, the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et. seq.*, the Equal Pay Act, 29 U.S.C. § 206(d) and Illinois common law. Plaintiff Michelle Marski's claims arise from Defendants' discriminatory conduct toward Marski during her employment period and Defendants' violation of federal and state wage and hour laws with regard to her compensation.

1

**THE PARTIES**

1.     Plaintiff Michelle Marski ("Marski") is a resident and citizen of Illinois. Within the prior three years, Marski was employed by Courier Express One, Inc., PreCC, Inc. f/k/a Premier CC, Inc., Premier CC LLC, A Qualtek Company, Vertek, LLC, and Dispatch Express Inc. as an "employee" as defined by the Illinois Minimum Wage Law (820 ILCS 105/3(d), the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §203(e)(1), the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12111 (4), the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §630 (f), Title VII, 42 U.S.C. §2000e(f), the Illinois Minimum Wage Law ("IMWL"), 820 ILCS §105/3, and the Illinois Human Rights Act ("IHRA"), 775 ILCS §5/2-101(A) and within the meaning of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et. seq*. and the Equal Pay Act (29 U.S.C. § 206(d)). Marski was also an "employee" and a "participant" in and "beneficiary" of an employee benefit plan as defined by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1002.

2.     Defendant Courier Express One, Inc. ("Courier") is an Illinois corporation which does business in Schaumburg, Illinois. Courier is a logistics company that provides residential and commercial delivery services. Courier is  and was at all relevant times an "employer" as defined in the ADA, 42 U.S.C. §12111 (5), the ADEA, 29 U.S.C. §630 (b), Title VII, 42 U.S.C. §2000e(b), the IMWL, 820 ILCS §105/3, and the IHRA, 775 ILCS §5/2-101(B) and within the meaning of the IWPCA, 820 ILCS 115/1 *et. seq*.. Courier also is and was at all relevant times an "employer" as defined by ERISA and, on information and belief, it was an "administrator" and/or  "sponsor" within the meaning of ERISA, 29 U.S.C. §1002.  Courier has 50 or more employees within a 75-mile radius of its Schaumburg facility and is a "covered employer" within the meaning of the Family and Medical Leave Act ("FMLA"), 29 CFR §825.104. Courier is an "enterprise" as defined

in 29 U.S.C. §203(r)(1) and is an "enterprise is engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A). On information and belief, Courier's annual gross revenue exceeds $500,000.00.

3.       On information and belief, Defendant Premier CC LLC, a Qualtek Company ("Premier CC LLC") is a Pennsylvania limited liability company with its registered address located at 1150 First Avenue, Suite 600, King of Prussia, PA, 19406. Premier CC LLC is in the telecommunications industry and it provides residential and commercial cable installation and repair services. Premier CC LLC is or was at all relevant times an "employer" as defined in the ADA, 42 U.S.C. §12111 (5), the ADEA, 29 U.S.C. §630 (b), the IMWL, 820 ILCS §105/3 and Title VII, 42 U.S.C. §2000e(b) and within the meaning of the IWPCA, 820 ILCS 115/1 *et. seq*. Premier CC LLC is an "enterprise" as defined in 29 U.S.C. §203(r)(1) and is an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

4.       Defendant PreCC, Inc. ("PreCC") is an Illinois corporation with its president's registered address located at 300 N. Martingale Rd., Suite 750, Schaumburg, IL 60173. The Illinois Secretary of State's records reflect that PreCC, Inc.'s old corporate name was Premier CC, Inc. as of November 15, 2018. PreCC, Inc., f/k/a Premier CC, Inc., is or was at all relevant times a telecommunications company which offers or offered cable installation and repair services. PreCC has and/or had at all relevant times 20 or more employees and is and/or was at all relevant times an "employer" as defined in the ADA, 42 U.S.C. §12111 (5), the ADEA, 29 U.S.C. §630 (b), Title VII, 42 U.S.C. §2000e(b), the IMWL, 820 ILCS §105/3 and the IHRA, 775 ILCS §5/2-101(B). PreCC is and/or was at all relevant times an "employer" as defined by ERISA and, on information and belief, it is and/or was an "administrator" and/or "sponsor" within the meaning of ERISA, 29

U.S.C. §1002. PreCC is and/or was at all relevant times an "enterprise" as defined in 29 U.S.C. §203(r)(1) and an "enterprise is engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

5.    Defendant Vertek, LLC ("Vertek") is a Florida Limited Liability Company with its principle place of business at 6310 NW 24th St., Boca Raton, FL 33434. Vertek is in the telecommunications industry and provides underground cable installation services. Vertek has and/or had at all relevant times 20 or more employees and is and/or was at all relevant times an "employer" as defined in the ADA, 42 U.S.C. §12111 (5), the ADEA, 29 U.S.C. §630 (b), the IMWL, 820 ILCS §105/3 and Title VII, 42 U.S.C. §2000e(b). Vertek is or was at all relevant times an "enterprise" as defined in 29 U.S.C. §203(r)(1) and an "enterprise is engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A). On information and belief Vertek's annual gross revenue exceeds or exceeded $500,000.00 during the relevant time period and it does or did business in Illinois at all relevant times.

6.    Defendant Dispatch Express, Inc. ("Dispatch Express") is a Missouri corporation with its principle place of business or corporate headquarters located at 300 N. Martingale Rd., Suite 750, Schaumburg, IL 60173. Dispatch Express provided a dispatch call center and, at a later date, provided logistics for commercial and residential delivery services during the relevant time period. On information and belief, Dispatch Express employed approximately 20 persons and does or did business in Illinois during the relevant time period. Dispatch is or was at all relevant times an "employer" as defined in the ADA, 42 U.S.C. §12111 (5), the ADEA, 29 U.S.C. §630 (b), Title VII, 42 U.S.C. §2000e(b), the IMWL, 820 ILCS §105/3 and the IHRA, 775 ILCS §5/2-101(B) and within the meaning of the IWPCA, 820 ILCS 115/1 *et. seq*. Dispatch is an "enterprise" as defined

4

in 29 U.S.C. §203(r)(1) and is an "enterprise is engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

7.     Defendant Anthony Urso ("Urso") is a resident and citizen of Illinois. On information and belief, Urso was the Chief Operating Officer of Premier CC, Inc., is the vice president of PreCC, Inc., is the Chief Operating Officer of Courier Express One, Inc., was a member of Vertek LLC at all relevant times, and is the President and a Director of Dispatch Express.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over Counts I – VIII, XIV, XVI and XVII of this action pursuant to 28 U.S.C. §1331 because these claims arise under the laws of the United States. This Court has supplemental jurisdiction over Counts IX – XIII, XV and XVIII pursuant to 28 U.S.C. § 1367 because these claims are so related to claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. This Court also has jurisdiction pursuant to 42 U.S.C. §2000(e)-(5)(f)(3) because the unlawful employment practices alleged in Plaintiff's Complaint were committed here.

9.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) and (2) because defendants PreCC, Courier, Dispatch Express and Anthony Urso reside here, all Defendants do business here and/or did business here during the relevant time period and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here.

10.     Marski has exhausted her administrative remedies and her filing of this action is timely.

## BACKGROUND

11.     Marski is a female and she is over the age of 40 (collectively "Protected Characteristics").

12.     Marski has fibromyalgia, migraines and vertigo. (Marski's fibromyalgia, migraines and vertigo are referred to in the Complaint collectively as "Disabilities" and singularly each as a "Disability"). Marski had these Disabilities throughout her Employment Period as defined herein.

13.     Marski's fibromyalgia causes her to experience chronic pain, panic attacks, increased blood pressure, dizziness and extreme fatigue and it substantially limits one or more of her major life activities, including thinking, working, breathing, sleeping, hearing, walking, standing, lifting, bending, learning, reading, and concentrating. In addition, it substantially limits the operation of one or more of Marski's major bodily functions, including her digestive, bowel, neurological, respiratory, reproductive and cardiovascular functions.

14.     Marski's ocular migraines cause her to lose her vision and experience pain and nausea and substantially limit one or more of her major life activities, including caring for herself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, learning, reading, concentrating, thinking, communicating and working. In addition, Marski's migraines substantially limit the operation of one or more of Marski's bodily functions, including her digestive and neurological functions.

15.     Finally, Marski's vertigo substantially limits one or more of her life activities including performing manual tasks, seeing, walking, hearing, standing, lifting, bending, learning, reading, concentrating, thinking, working, maintaining her balance and driving.

### Premier CC, Inc. Hires Marski

16.     In May of 2015, Premier CC, Inc. hired Marski.

6

17.     Marski worked for Premier CC, Inc. from at least May 2015 to July 2018.

18.     Premier CC, Inc. issued Marski's paychecks from approximately May of 2015 to July of 2018 and issued Marski's W-2s for tax years 2015-2018.

19.      Marski was a qualified beneficiary of a group medical, dental, and/or vision plan while she worked for Premier CC, Inc.

20.     Defendant Urso supervised Marski while she worked for Premier CC, Inc.

21.     On information and belief, Urso is and was at all relevant times the sole owner or a part owner of Premier CC, Inc. including from May 2015 to July 2018.

### Premier CC, Inc., Urso and Vertek Interfere with Marski's FMLA Leave

22.     Premier CC, Inc. was aware of Marski's Disabilities.

23.     In approximately December of 2016, Marski submitted a request to Premier CC, Inc. and Urso for FMLA leave to undergo a major surgical procedure on or about December 9, 2016. She also asked for a period of two to three weeks' FMLA leave following the surgery to recover and rehabilitate from the procedure.

24.     Premier CC, Inc. and Urso approved Marski's FMLA request. Urso verbally assured Marski that she could take FMLA leave.  However, he told her that she could take her FMLA leave only if she worked from home during her FMLA leave period.

25.     Approximately two weeks into Marski's FMLA leave period, Urso repeatedly contacted Marski, including to ask when Marski would return to work.

26.     Marski developed an infection relating to her surgical procedure. She requested additional FMLA leave to recover and rehabilitate from the infection. Premier CC, Inc. and Urso verbally approved the extension of Marski's initial FMLA leave period.

27.     During Marski's continued FMLA leave, Urso required Marski to work from home.

28.     On approximately January 10, 2017, while Marski was on leave, Urso and Premier CC, Inc. required Marski to attend a meeting at Premier CC, Inc.'s Schaumburg, Illinois office with Urso and his business associate, Andrew Healy. The meeting was regarding human resources and payroll issues for Vertek. Both Healy and Urso were members of Vertek.

29.     During Marski's continued FMLA leave, Urso contacted Marski, stated that her "problems cannot become his problems" and demanded that she return to work by a date specified by Urso, which was in mid- to late- January 2017, or he would "find someone else to do her job."

30.     As a result, Marski was forced to cut her FMLA leave short and return to work, despite the fact that she was not fully rehabilitated from her surgery and the resulting infection, because she feared losing her job.

31.     After she returned to work, in approximately January of 2017 and January of 2018, Marski submitted requests to Premier CC, Inc. for intermittent FMLA leave for her fibromyalgia, migraines and vertigo. Premier CC, Inc. approved Marski's intermittent FMLA leave requests.

32.     In approximately January of 2017, Urso's sister, who was also a Premier CC, Inc. employee, texted Marski's friend, a third party who was not employed by Premier CC, Inc. and commented that she "did not trust" Marski and that she had never heard of someone needing a month to recover from the major surgical procedure that Marski underwent.

33.     In doing so, Urso's sister discussed Marski's sensitive health information relating to the nature of her surgical procedure with a third party.

**Urso Sells Premier CC, Inc.**

34.     In approximately February of 2018, Urso told Marski that he intended to sell Premier CC, Inc.

35.     On information and belief, Qualtek USA acquired some or all of Premier CC, Inc.'s assets and/or liabilities, excluding the name Premier CC, Inc., in approximately July of 2018 ("the Transaction"). On information and belief, Qualtek USA currently owns and runs the business operations which it acquired from Premier CC, Inc. in the Transaction as Premier CC LLC.

36.     On information and belief, as part of the Transaction, Urso and Premier CC, Inc. agreed with QualTek USA, LLC that Marski and one or more other Premier CC, Inc. employees would work for Premier CC LLC for a period of one month from July to August 2018 out of Premier CC, Inc's Schaumburg facility.

37.     From July to August 2018, Marski worked for Premier CC LLC handling certain payroll and human resources functions per the terms of the Transaction. She performed the work out of Premier CC, Inc.'s Schaumburg facility and from her home.

**Marski Accepts a Job with Courier**

38.     In early 2018, Urso offered Marski a job with Courier. Marski accepted the job in approximately July of 2018.

39.     Urso had, however, required Marski to handle certain payroll processing and human resources functions for Courier beginning approximately three months earlier, in April of 2018. Urso supervised Marski from April 2018 to February 6, 2019 while she handled payroll and certain human resources functions for Courier.

40.     From July to August 2018, Marski simultaneously worked for both Courier and Premier CC LLC. She regularly worked 70 or more hours per week. She was not compensated by Courier or Premier CC LLC for the time she worked in excess of 40 hours per week, nor was she compensated at a rate of one and a half (1.5) times her regular hourly rate for the additional time.

41.     On information and belief, in approximately November of 2018, Premier CC, Inc. changed its name to PreCC, Inc.

42.     Courier issued Marski's paychecks from approximately July of 2018 to February of 2019. Courier issued Marski's W-2 for tax year 2018. Marski's last rate of pay was $62,400.00 per year.

43.     Marski was a qualified beneficiary of a group medical, dental, and/or vision plan while she was employed by Courier. The most recent plan documents which Marski received identify the name of Marski's group plan as "Premiercc" and the name of the plan as the "Courier Express One group health plan."

44.     On information and belief, Urso is the sole or a part owner of Courier.

45.     Throughout Marski's employment period with Courier and with Premier CC, Inc., from May 2015 to February 6, 2019 ("Employment Period"), Urso had the authority to hire and fire employees, make pay decisions and control employees', including Marski's, work schedules and conditions of employment. Urso established the pay policies for PreCC, Inc. f/k/a Premier CC, Inc. and Courier and he exercised day-to-day control of the operations of Courier and PreCC.

46.     Urso and Courier were aware of Marski's Disabilities.

### Urso's Other Companies

47.     On information and belief, Urso was the sole or a part owner of at least three other companies during Marski's Employment Period in addition to Premier CC, Inc. and Courier, which were as follows:

a.     Defendant Vertek, which does or did business in Illinois during Marski's Employment Period and in which Urso was previously a member.;

b.     SV Wilson Logistics LLC ("SV Wilson"), an Illinois limited liability company; and

10

c.      Defendant Dispatch Express, which does or did business in Illinois during Marski's Employment Period and of which Urso is the President and a Director. (Premier CC, Inc., Courier, Vertek, SV Wilson and Dispatch Express will sometimes be referred to herein as "Urso's Companies").

48.     During Marski's Employment Period, Urso required Marski to handle certain human resources and payroll functions not only for Courier and Premier, but also for Defendants Vertek, and Dispatch Express and for SV Wilson.

49.     Marski regularly worked over 40 hours per week during her Employment Period processing payroll and handling certain human resources functions for multiple of Urso's Companies at Urso's direction and under his control. For example, Marski processed payroll and handled human resources functions for the following companies during the following approximate time periods:

a.   Premier CC, Inc. from May 2015 to July 2018;

b.   Vertek LLC from May 2015 to August 2018;

c.   SV Wilson from Summer 2018 to January 2019;

d.   Dispatch Express from February 2017 to March 2018 and again from August 2018 to January 2019; and

e.   Courier from April 2018 to February 2019.

50.     Marski regularly worked over 40 hours per week for Urso's Companies.

**Marski Was Not An Exempt Employee Under The FLSA**

51.     Marski's primary duties during her Employment Period involved handling certain human resources and payroll functions. Marski did not fall within the administrative exemption to the FLSA's overtime requirements because Marski's primary duties did not involve "the exercise

11

of discretion and independent judgment with respect to matters of significance" within the meaning of 29 C.F.R. §541.202. For example, Marski followed procedures and policies established by Defendants and had no ability to deviate from those procedures or policies without prior approval. In addition, Marski had no ability or authority to commit Defendants in matters having a significant financial impact and had no authority to negotiate and bind them on significant matters. She was not involved in planning long- or short-term business objectives and she did not investigate and resolve matters of significance on behalf of management. Marski also had no authority to make an independent choice, free from immediate direction or supervision.

52.     Marski also did not fall within the executive exemption to the FLSA's overtime provisions because (1) Marski's primary duty was not the "management" of any one Defendant's business or of a department of subdivision thereof within the meaning of 29 C.F.R. § 541.102; (2) Marski did not customarily and regularly direct the work of two or more other employees; and (3) Marski had no authority to hire or fire other employees and in the event that she made suggestions or recommendations as to hiring, firing, advancement, promotion or any other change of status of other employees to Urso, her suggestions or recommendations were given no weight. (29 C.F.R. 541.100).

**Urso's Companies' and Urso's Discriminatory Conduct
Toward Marski and Violation of Federal and State Wage and Hour
Laws During Her Employment Period**

53.     Vertek was Marski's joint employer from approximately May 2015 to August 2018 for purposes of the FMLA, FLSA, Title VII, the ADA, the ADEA, the IHRA, the Equal Pay Act and the IMWL. For example, Anthony Urso, a member of Vertek, supervised Marski and controlled her work while she handled payroll processing and HR functions for Vertek. On

information and belief, a portion of Marski's salary was allocated to Vertek which was based roughly upon the percentage of time Marski spent performing work for Vertek each quarter.

54.     Dispatch Express was Marski's joint employer from approximately February 2017 to March 2018 and again from August 2018 to January 2019 for purposes of the FMLA, FLSA, Title VII, the ADA, the ADEA, the IHRA, the Equal Pay Act and the IMWL. For example, Anthony Urso, the President and a Director of Dispatch Express, supervised Marski and controlled her work while she handled payroll processing and HR functions for Dispatch Express.

55.     Premier CC LLC was Marski's joint employer from approximately July of 2018 to August of 2018 for purposes of the FMLA, FLSA, Title VII, the ADA, the ADEA, the IHRA, the Equal Pay Act and the IMWL. For example, by agreement of Defendants Premier CC LLC and Premier CC, Inc. as part of the terms of the Transaction, Marski handled payroll processing and HR functions for Premier CC, LLC from July of 2018 to August of 2018.

56.     Marski met or exceeded PreCC's f/k/a Premier CC, Inc.'s, Premier CC, LLC's, Courier's, Vertek's, and Dispatch Express's legitimate job expectations during her Employment Period. For example, in approximately July 2015, PreCC f/k/a Premier CC, Inc. promoted Marski. Marski also received raises on a yearly basis while employed by Premier CC, Inc. and she received positive performance reviews during her Employment Period.

57.     Defendants treated Marski less favorably than other similarly situated employees outside of her protected class on a continuing basis during the periods in which Defendants were Marski's employers and/or joint employers as set forth above, including in paragraphs 49(a)-(e), because of one or more of her Protected Characteristics or one or more of her Disabilities, including without limitation as follows:

a.       On information and belief, Defendants paid Marski less than similarly situated employees who were outside of Marski's protected class and/or who did not have a disability;

b.       Defendants, through Urso, singled Marski out and treated her less favorably than her similarly situated coworkers, including by singling Marski out for verbal abuse and threats on a continuing basis;

c.       Defendants required Marski to work during her paid time off, when she was sick and/or while she was on medical leave.

d.       Defendants, through Urso, made one or more discriminatory statements about Marski's age, gender and/or Disabilities;

e.       Defendants required Marski to routinely work in excess of 40 hours per week for multiple Defendants and failed to compensate Marski for her work in excess of 40 hours per week;

f.       Defendant PreCC f/k/a Premier CC, Inc., through Urso, delayed Marski's yearly raises by making her stand in Urso's doorway and beg Urso for weeks after her coworkers received their raises to award her the promised raises on one or more occasions, which caused Marski embarrassment and financial and emotional stress. Urso did not engage in similar discriminatory conduct toward other employees outside of Marski's protected class.

g.       Defendants' personnel, including Urso, otherwise engaged in discriminatory conduct toward Marski and singled her out for less favorable treatment than her similarly situated coworkers.

**Courier Retaliates Against Marski**

58.     On February 1, 2019, Urso threatened Marski's job.

59.     Marski complained to Defendants, through her supervisor, Urso, on one or more occasions about Urso's singling her out for less favorable treatment including, without limitation, on or about February 5, 2019. Defendants ignored Marski's complaints and failed to take remedial action.

60.     On February 5, 2019, Urso went on a tirade at Marski, verbally abused her, cursed at her and made threats against her.

61.     Urso's verbal abuse and threats caused Marski extreme emotional distress and she feared for her safety and health.

62.     As a result, Marski advised Urso that she needed to leave work for the day because she was not feeling well and she visited her doctor's office.

63.     Marski's physician advised her to remain off of work from February 5 to February 6, 2019 because Marski's blood pressure had spiked and because Urso's tirade had triggered a flare-up of Marski's fibromyalgia. Marski submitted a doctor's note and requested two days' off of work as a reasonable workplace accommodation. Marski also submitted her request for intermittent FMLA leave to Courier and Urso on February 5, 2019.

64.     Urso acknowledged his and Courier's receipt of Marski's intermittent FMLA request by email.

65.     Courier fired Marski on or about February 6, 2019.

## Marski Initiates Legal Proceedings and Courier
### Continues to Retaliate Against Marski

66.     Marski initiated legal proceedings to enforce her rights under federal and state antidiscrimination laws. Marski's counsel put Defendants Courier, PreCC, Dispatch Express and Urso on notice of Marski's claims and their document preservation obligations.

67.     Marski filed charges of discrimination against Defendants with the EEOC on March 7, 2019.

68.     Courier, through Urso, retaliated against Marski for engaging in the statutorily protected activity alleged in paragraphs 59, 63, and 66-67 above, including as follows:

    a.     Courier and PreCC willfully refused and continue to refuse to pay Marski all of the pay which Defendants owed to her at the time of her termination, including for her accrued and unused PTO for 2018 in the amount of 40 hours and her accrued and unused PTO for 2019 in the amount of 80 hours, overtime pay and the full wages she earned for work she performed on February 3-5;

    b.     Courier and Urso intentionally delayed third-party Aflac's processing of Marski's application for short term disability benefits, for which she had paid premiums during her Employment Period;

    c.     Courier, through Urso, made disparaging comments about Marski to one or more third parties, including her former coworkers, including by telling Marski's former coworkers that she quit and by stating to her former coworker and a former Premier CC, Inc. manager that Marski was fired and that she is "mean and hateful";

    d.     Urso threatened to sue Marski and engaged an attorney to threaten a baseless lawsuit against her;

16

e.      Courier filed a baseless protest against Marski's application for unemployment benefits, which caused the Illinois Department of Employment Security to stop providing her with benefits for two weeks and delayed her receipt of unemployment benefits for that two-week period; and

f.      On information and belief, Urso and Courier interfered with Marski's application to Amazon to become a Delivery Service Provider.

69.      After Courier terminated Marski's employment, Courier and/or Premier failed to issue a timely COBRA notice to Marski. Courier and/or Premier was/were either grossly negligent or acted in bad faith in its/their failure to issue a timely COBRA notice to Marski.

### Defendants Willfully Violated the FLSA

70.      Defendants had no reasonable basis to believe that Marski was exempt from the FLSA's overtime provisions. They either knew or acted with reckless disregard in misclassifying Marski as exempt from the overtime provisions of the FLSA. Defendants' willfulness is demonstrated by, or can reasonably be inferred from, Defendants' actions and/or failure to act, including as follows:

a.      At all relevant times, Premier CC, Inc. and Courier maintained payroll records which reflected the fact that Marski worked in excess of 40 hours per week. Urso had access to and reviewed Marski's payroll records throughout her Employment Period. Therefore, Defendants had actual knowledge that Marski worked overtime;

b.      At all relevant times, Defendants knew that they did not pay Marski for her hours worked in excess of 40 hours per week, much less pay her at the overtime amount of one and a half (1.5) times her regular hourly rate as required by the FLSA and IMWL;

17

c.     Defendant Urso supervised Marski and controlled all aspects of her employment on a day-to-day basis, including by assigning her work, and was aware of the nature of Marski's work;

d.     As evidenced by Defendants' Premier CC, Inc.'s, Dispatch Express's, Vertek's and Courier's handbooks and pay practices with regard to other employees, the foregoing Defendants knew they were subject to the wage requirements of the FLSA as an "employer" under 29 U.S.C. §203(d);

e.     Defendants were aware that (1) Marski's primary duties did not involve "the exercise of discretion and independent judgment with respect to matters of significance" within the meaning of 29 C.F.R. §541.202; (2) Marski's primary duty was not the "management" of any one Defendant or of a department or subdivision of any one Defendant within the meaning of 29 C.F.R. § 541.102; (3) Marski did not customarily and regularly direct the work of two or more other employees; and (4) Marski had no authority to hire or fire other employees.

f.     Defendants lacked a good faith basis to believe that Marski fell within an exemption to the overtime requirements of the FLSA. Defendants deliberately misclassified Marski as exempt from the FLSA's overtime provision in order to avoid paying her wages for the hours she worked over 40 per week and to avoid paying her the overtime compensation to which she was entitled.

g.     Defendants were aware that they would (and did) benefit financially by failing to pay Marski for her hours worked in excess of forty (40) per week; and

h.     Defendants had a strong financial motive to violate the IMWL, IWPCA, and FLSA by misclassifying Marski as exempt from the FLSA's overtime requirements.

**COUNT I**
**VIOLATION OF 42 U.S.C. § 2000(e) *et seq.* ("Title VII")**
**AGAINST DEFENDANTS COURIER EXPRESS ONE, INC.,**
**PRECC, INC., PREMIER CC LLC, A QUALTEK COMPANY,**
**DISPATCH EXPRESS INC., AND VERTEK LLC**
**GENDER DISCRIMINATION (DISPARATE TREATMENT, HARASSMENT,**
**HOSTILE WORK ENVIRONMENT)**

71.     Marski realleges and incorporates by reference Paragraphs 1 through 70(h) above.

72.     Pursuant to Title VII, Marski is a member of a "protected class" because of her gender.

73.     Marski was meeting or exceeding each Defendant's legitimate job expectations throughout her Employment Period.

74.     Defendants, during the periods in which they were her "employer" or "joint employer" as set forth above, including in paragraphs 49(a)-(e), took one or more adverse actions against Marski because of her gender as follows:

        a.      Courier fired Marski;

        b.      Defendants subjected Marski to different and less favorable terms and conditions of employment than male employees, including as set forth in paragraphs 57(a)-(g) above;

        c.      Defendants subjected Marski to a workplace environment which was subjectively and objectively offensive;

        d.      Defendants subjected Marski to discrimination and harassment by Urso because of Marski's gender;

        e.      Defendants' discriminatory and harassing conduct was severe and pervasive;

f.      Defendants knew or should have known about Urso's discriminatory conduct; and

g.      Defendants unreasonably failed to take remedial action for Urso's discriminatory conduct.

75.    Courier's alleged reasons for firing Marski are pretextual.

76.    Defendants treated similarly situated male employees more favorably than they treated Marski.

77.    Defendant's discriminatory conduct was intentional.

78.    Defendants' conduct was done with malice or reckless indifference to Marski's rights under federal and Illinois law.

79.    Marski was damaged by Defendants' discriminatory conduct in violation of Title VII. Her damages include, but are not limited to, her lost wages, damage to her career, lost benefits, future pecuniary losses, inconvenience, emotional and psychological harm and other harm.

**WHEREFORE**, Plaintiff Michelle Marski prays that the Court enter judgment in her favor and against Defendants Courier Express One, Inc. PreCC, Inc., Vertek LLC, Dispatch Express, Inc. and Premier CC LLC, A Qualtek Company and respectfully requests that the Court:

A.      Declare Defendants' conduct to violate the rights guaranteed to Michelle Marski under 42 U.S.C. §2000(e);

B.      Grant a permanent injunction restraining Defendants, their officers and employees and all persons in active concert or participation with Defendants from engaging in any employment practice which unlawfully discriminates on the basis of gender;

20

C. Order Defendants to make Michelle Marski whole by providing the affirmative relief necessary to eradicate the effects of Defendants' unlawful practices, including frontpay;

D. Grant Michelle Marski consequential, compensatory, punitive, nominal and any other damages, including backpay, additional backpay to account for the negative tax consequences of a lump-sum payment and damages for emotional pain, distress, and suffering and mental anguish, in an amount to be determined at trial;

E. Grant Michelle Marski such equitable and injunctive relief that the Court may deem appropriate;

F. Grant Michelle Marski her attorneys' fees, costs, pre-judgment and post-judgment interest and disbursements;

G. Grant Michelle Marski such further relief as the Court deems necessary and proper.

**COUNT II**
**VIOLATION OF 42 U.S.C. § 2000(e) *et seq.* ("Title VII")**
**AGAINST DEFENDANT COURIER EXPRESS ONE, INC.**
**FOR RETALIATION**

80. Marski realleges and incorporates by reference Paragraphs 1 through 70(h) above.

81. Marski was performing her job in a satisfactory or above-satisfactory manner.

82. Marski engaged in statutorily protected activity, including by complaining to Courier on one or more occasions about Urso's singling her out for less favorable treatment, by requesting workplace accommodations in the form of two-days' leave from Courier, and by initiating legal proceedings against Courier to enforce her rights under federal and state antidiscrimination statutes ("Protected Activity").

21

83. Courier retaliated against Marski because she engaged in Protected Activity by firing her and by engaging in one or more acts as set forth in paragraphs 59-60, 65 and 68-69 above.

84. Courier treated Marski less favorably than one or more similarly situated employees who did not engage in statutorily protected activity.

85. Courier's discriminatory conduct was intentional.

86. Courier's conduct was done with malice or reckless indifference to Marski's rights under federal and Illinois law.

87. Marski was damaged by Courier's discriminatory conduct in violation of Title VII. Her damages include, but are not limited to, her lost wages, damage to her career, lost benefits, future pecuniary losses, inconvenience, emotional and psychological harm and other harm.

**WHEREFORE**, Plaintiff Michelle Marski prays for judgment in her favor and against Defendant Courier Express One, Inc. and respectfully requests that the Court:

A. Declare Defendant's conduct to violate the rights guaranteed to Michelle Marski under 42 U.S.C. §2000(e);

B. Grant a permanent injunction restraining Defendant, its officers and employees and all persons in active concert or participation with Defendant from engaging in any employment practice which unlawfully discriminates on the basis of gender;

C. Order Defendant to make Michelle Marski whole by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices, including frontpay;

D. Grant Michelle Marski consequential, compensatory, punitive, nominal and any other damages, including backpay, additional backpay to account for the negative tax

consequences of a lump-sum payment and damages for emotional pain, distress, and suffering and mental anguish, in an amount to be determined at trial;

E.      Grant Michelle Marski such equitable and injunctive relief that the Court may deem appropriate;

F.      Grant Michelle Marski her attorneys' fees, costs, pre-judgment and post-judgment interest and disbursements;

G.      Grant Michelle Marski such further relief as the Court deems necessary and proper.

**COUNT III**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**(42 U.S.C.S. §12101 *et seq.*)**
**AGAINST DEFENDANTS COURIER EXPRESS ONE, INC.,**
**PRECC, INC., PREMIER CC LLC, A QUALTEK COMPANY,**
**DISPATCH EXPRESS INC., AND VERTEK LLC**
**DISCRIMINATION (DISPARATE TREATMENT, HOSTILE WORK**
**ENVIRONMENT AND HARASSMENT)**

88.     Plaintiff realleges and incorporates by reference paragraphs 1- 70(h) above.

89.     During her Employment Period, Marski had Fibromyalgia, vertigo and migraine headaches, which substantially limited one or more major life activities, including, but not limited to the ways set forth in paragraphs 12-15 above, and which qualify as a disability or disabilities under the Americans with Disabilities Act (42 U.S.C.S. § 12102).

90.     Marski was qualified to perform the essential functions of her job with or without reasonable accommodations.

91.     Defendants, during the periods in which they were her "employer" or "joint employer" as set forth above, including in paragraphs 49(a)-(e), took one or more adverse actions against Marski because of her Disability or Disabilities as follows:

a.      Courier fired Marski;

b. Defendants subjected Marski to different and less favorable terms and conditions of employment than employees who did not have a disability as set forth in paragraphs 57(a)-(g) above;

c. Defendants subjected Marski to a workplace environment which was subjectively and objectively offensive;

d. Defendants subjected Marski to discrimination and harassment by Urso because of Marski's Disability or Disabilities;

e. Defendants' discriminatory and harassing conduct was sufficiently severe or pervasive to alter the conditions of her employment and create a hostile or abusive atmosphere;

f. Defendants knew or should have known about Urso's discriminatory conduct;

g. Defendants unreasonably failed to take remedial action for Urso's discriminatory conduct.

92. Defendants' discriminatory conduct was intentional.

93. Defendants' conduct was done with malice or reckless indifference to Marski's rights under federal and Illinois law.

94. Marski was damaged by Defendants' discriminatory conduct in violation of the Americans with Disabilities Act. Marski's damages include, but are not limited to, her lost wages, damage to her career, lost benefits, future pecuniary losses, inconvenience, embarrassment, emotional and psychological harm and other harm.

**WHEREFORE**, Plaintiff Michelle Marski prays for judgment in her favor and against Defendants Courier Express One, Inc., PreCC, Inc., Vertek LLC, Dispatch Express, Inc. and Premier CC LLC, A Qualtek Company and respectfully requests that the Court:

A. Declare Defendants' conduct to violate the rights guaranteed to Michelle Marski under the Americans with Disabilities Act;

B. Grant a permanent injunction restraining Defendants, their officers and employees and all persons in active concert or participation with Defendants from engaging in any employment practice which unlawfully discriminates on the basis of a disability;

C. Order Defendants to make Michelle Marski whole by providing the affirmative relief necessary to eradicate the effects of Defendants' unlawful practices, including frontpay;

D. Grant Michelle Marski consequential, compensatory, punitive, nominal and any other damages, including backpay, additional backpay to account for the negative tax consequences of a lump-sum payment and damages for emotional pain, distress, and suffering and mental anguish, in an amount to be determined at trial;

E. Grant Michelle Marski such equitable and injunctive relief that the Court may deem appropriate;

F. Grant Michelle Marski her attorneys' fees, costs, pre-judgment and post-judgment interest and disbursements;

G. Grant Michelle Marski such further relief as the Court deems necessary and proper.

**COUNT IV**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**(42 U.S.C.S. §12101 *et seq.*)**
**AGAINST DEFENDANT COURIER EXPRESS ONE, INC.**
**FAILURE TO ACCOMMODATE**

95. Plaintiff realleges and incorporates by reference paragraphs 1-70(h) above.

96. During her Employment Period, Marski had fibromyalgia, vertigo and migraine headaches, which substantially limited one or more major life activities, including, but not limited

25

to, the ways set forth in paragraphs 12-15 above, and which qualify as a disability or disabilities under the Americans with Disabilities Act (42 U.S.C.S. § 12102).

97.     Marski was qualified to perform the essential functions of her job with or without reasonable accommodations.

98.     Courier was aware of Marski's Disability or Disabilities and her workplace restrictions, including on February 5, 2019.

99.     Courier failed to provide reasonable workplace accommodations to Marski by denying her request for two-days' medical leave on February 5, 2019.

100.     Courier's discriminatory conduct was intentional.

101.     Courier's conduct was done with malice or reckless indifference to Marski's rights under federal and Illinois law.

102.     Marski was damaged by Courier's discriminatory conduct in violation of the Americans with Disabilities Act. Marski's damages include, but are not limited to, her lost wages, damage to her career, lost benefits, future pecuniary losses, inconvenience, embarrassment, emotional and psychological harm and other harm.

**WHEREFORE**, Plaintiff Michelle Marski prays for judgment in her favor and against Defendant Courier Express One, Inc. and respectfully requests that the Court:

A.     Declare Defendant's conduct to violate the rights guaranteed to Michelle Marski under the Americans with Disabilities Act;

B.     Grant a permanent injunction restraining Defendant, its officers and employees and all persons in active concert or participation with Defendant from engaging in any employment practice which unlawfully discriminates on the basis of a disability;

26

C.      Order Defendant to make Michelle Marski whole by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices, including frontpay;

D.      Grant Michelle Marski consequential, compensatory, punitive, nominal and any other damages, including backpay, additional backpay to account for the negative tax consequences of a lump-sum payment and damages for emotional pain, distress, and suffering and mental anguish, in an amount to be determined at trial;

E.      Grant Michelle Marski such equitable and injunctive relief that the Court may deem appropriate;

F.      Grant Michelle Marski her attorneys' fees, costs, pre-judgment and post-judgment interest and disbursements;

G.      Grant Michelle Marski such further relief as the Court deems necessary and proper.

**COUNT V**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**(42 U.S.C.S. §12101 *et seq.*)**
**AGAINST DEFENDANT COURIER EXPRESS ONE, INC.**
**RETALIATION**

103.    Plaintiff realleges and incorporates by reference paragraphs 1- 70(h) above.

104.    During her Employment Period, Marski had Fibromyalgia, vertigo and migraine headaches, which substantially limited one or more major life activities, including but not limited to in the ways set forth in paragraphs 11-14 above and which qualify as a disability or disabilities under the Americans with Disabilities Act (42 U.S.C.S. § 12102).

105.    Marski was performing her job at Courier in a satisfactory or above-satisfactory manner.

27

106.    Marski engaged in statutorily protected activity by requesting workplace accommodations from Courier and by filing a charge of discrimination under the ADA ("Protected Activity").

107.    After Marski engaged in Protected Activity, Courier subjected her to one or more adverse employment actions as set forth in paragraphs 59-60, 65, and 68-69 above.

108.    Courier did not subject other, similarly situated employees who did not engage in Protected Activity to an adverse employment action.

109.    Courier's discriminatory conduct was intentional.

110.    Courier's conduct was done with malice or reckless indifference to Marski's rights under federal and Illinois law.

111.    Marski was damaged by Courier's discriminatory conduct in violation of the Americans with Disabilities Act. Marski's damages include, but are not limited to, her lost wages, damage to her career, lost benefits, future pecuniary losses, inconvenience, embarrassment, emotional and psychological harm and other harm.

**WHEREFORE**, Plaintiff Michelle Marski prays for judgment in her favor and against Defendant Courier Express One, Inc. and respectfully requests that the Court:

A.    Declare Defendant's condut to violate the rights guaranteed to Michelle Marski under the Americans with Disabilities Act;

B.    Grant a permanent injunction restraining Defendant, its officers and employees and all persons in active concert or participation with Defendant from engaging in any employment practice which unlawfully discriminates on the basis of a disability;

C.    Order Defendant to make Michelle Marski whole by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices, including frontpay;

D.     Grant Michelle Marski consequential, compensatory, punitive, nominal and any other damages, including backpay, additional backpay to account for the negative tax consequences of a lump-sum payment and damages for emotional pain, distress, and suffering and mental anguish, in an amount to be determined at trial;

E.     Grant Michelle Marski such equitable and injunctive relief that the Court may deem appropriate;

F.     Grant Michelle Marski her attorneys' fees, costs, pre-judgment and post-judgment interest and disbursements;

G.     Grant Michelle Marski such further relief as the Court deems necessary and proper.

## COUNT VI
## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT
### (29 U.S.C. § 621 *et. seq)*
### AGAINST DEFENDANTS COURIER EXPRESS ONE, INC.,
### PRECC, INC., PREMIER CC LLC, A QUALTEK COMPANY,
### DISPATCH EXPRESS INC., AND VERTEK LLC
### DISCRIMINATION (DISPARATE TREATMENT, HARASSMENT, HOSTILE
### WORK ENVIRONMENT)

112.    Marski realleges and incorporates by reference Paragraphs 1 through 70(h) above.

113.    Pursuant to the Age Discrimination in Employment Act ("ADEA"), Marski is a member of a "protected class" because she is over the age of 40.

114.    Marski was meeting or exceeding Defendants' legitimate job expectations throughout her Employment Period, including at the time that Defendant Courier terminated Marski from her position.

115.    Defendants took one or more adverse actions against Marski during the time they were employers or joint employers of Marski as set forth above, including in paragraphs 49(a)-(e), because of her age as follows:

a.    Courier fired Marski;

b.    Defendants subjected Marski to different and less favorable terms and conditions of employment than employees who were younger than 40 years old, including as set forth in paragraphs 57(a)-(g) above;

c.    Defendants subjected Marski to a workplace environment which was subjectively and objectively offensive;

d.    Defendants subjected Marski to discrimination and harassment by Urso because of Marski's age;

e.    Defendants discriminatory and harassing conduct was severe and pervasive;

f.    Defendants knew or should have known about Urso's discriminatory conduct;

g.    Defendants unreasonably failed to take remedial action for Urso's discriminatory conduct.

116.    Courier's alleged reasons for firing Marski are pretextual.

117.    Defedants treated similarly situated employees who were under the age of 40 more favorably than they treated Marski.

118.    Defendants' discriminatory conduct was willful

119.    Marski was damaged by Defendants' discriminatory conduct in violation of the ADEA. Her damages include, but are not limited to, her lost wages, damage to her career, lost benefits, future pecuniary losses, inconvenience, emotional and psychological harm and other harm.

**WHEREFORE**, Plaintiff Michelle Marski prays for judgment in her favor and against Defendants Courier Express One, Inc. PreCC, Inc., Vertek LLC, Dispatch Express, Inc. and Premier CC LLC, A Qualtek Company and respectfully requests that the Court:

30

A.    Declare Defendants' conduct to violate the rights guaranteed to Michelle Marski under 29 U.S.C. §621 *et. seq*;

B.    Grant a permanent injunction restraining Defendants, their officers and employees and all persons in active concert or participation with Defendants from engaging in any employment practice which unlawfully discriminates on the basis of age;

C.    Order Defendants to make Michelle Marski whole by providing the affirmative relief necessary to eradicate the effects of Defendants' unlawful practices, including frontpay;

D.    Grant Michelle Marski consequential, compensatory, liquidated, nominal and any other damages, including backpay, additional backpay to account for the negative tax consequences of a lump-sum payment and damages for emotional pain, distress, and suffering and mental anguish, in an amount to be determined at trial;

E.    Grant Michelle Marski such equitable and injunctive relief that the Court may deem appropriate;

F.    Grant Michelle Marski her attorneys' fees, costs, pre-judgment and post-judgment interest and disbursements;

G.    Grant Michelle Marski such further relief as the Court deems necessary and proper.

**COUNT VII**
**VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT**
**(29 U.S.C. §621 *et. seq.*)**
**AGAINST DEFENDANT COURIER EXPRESS ONE, INC.**
**FOR RETALIATION**

120.    Marski realleges and incorporates by reference Paragraphs 1 through 70(h) above.

121.    Marski was performing her job in a satisfactory or above-satisfactory manner.

122.    Marski engaged in statutorily protected activity, including by complaining to Courier on one or more occasions about Urso's singling her out for less favorable treatment and by initiating legal proceedings against Courier to enforce her rights under federal and state antidiscrimination statutes ("Protected Activity").

123.    Courier retaliated against Marski because she engaged in Protected Activity by firing her and by engaging in one or more acts as set forth in paragraphs 59-60, 65 and 68-69 above.

124.    Courier treated Marski less favorably than one or more similarly situated employees who did not engage in statutorily protected activity.

125.    Courier's discriminatory conduct was willful.

126.    Marski was damaged by Courier's discriminatory conduct in violation of the ADEA. Her damages include, but are not limited to, her lost wages, damage to her career, lost benefits, future pecuniary losses, inconvenience, emotional and psychological harm and other harm.

**WHEREFORE**, Plaintiff Michelle Marski prays for judgment in her favor and against Defendant Courier Express One, Inc. and respectfully requests that the Court:

A.    Declare Defendant's conduct to violate the rights guaranteed to Michelle Marski under 29 U.S.C. §621 *et. seq*;

B.    Grant a permanent injunction restraining Defendant, its officers and employees and all persons in active concert or participation with Defendant from engaging in any employment practice which unlawfully discriminates on the basis of age;

C.    Order Defendant to make Michelle Marski whole by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices, including frontpay;

D.  Grant Michelle Marski consequential, compensatory, liquidated, nominal and any other damages, including backpay, additional backpay to account for the negative tax consequences of a lump-sum payment and damages for emotional pain, distress, and suffering and mental anguish, in an amount to be determined at trial;

E.  Grant Michelle Marski such equitable and injunctive relief that the Court may deem appropriate;

F.  Grant Michelle Marski her attorneys' fees, costs, pre-judgment and post-judgment interest and disbursements;

G.  Grant Michelle Marski such further relief as the Court deems necessary and proper.

**COUNT VIII**
**VIOLATION OF THE EQUAL PAY ACT (29 U.S.C. §206(d))**
**AGAINST DEFENDANTS COURIER EXPRESS ONE, INC.,**
**PRECC, INC., PREMIER CC LLC, A QUALTEK COMPANY,**
**DISPATCH EXPRESS INC., AND VERTEK LLC**

127.  Plaintiff realleges and incorporates by reference paragraphs 1- 70(h) above.

128.  Defendants, on information and belief, paid Marski less than one or more similarly situated male employee(s).

129.  Marski and the male employee(s) performed equal or substantially similar work requiring equal or substantially similar skill, effort and responsibility.

130.  Marski and the male employee(s) had similar or the same working conditions.

131.  Defendants' discriminatory conduct was intentional.

132.  Defendants' conduct was done with malice or reckless indifference to Marski's rights under federal and Illinois law.

133.    Marski was damaged by Defendants' discriminatory conduct in violation of the Equal Pay Act. Marski's damages include, but are not limited to, her lost past earnings and lost earnings opportunities.

**WHEREFORE,** Plaintiff Michelle Marski prays that the Court enter judgment in her favor and against Defendants Courier Express One, Inc. PreCC, Inc., Vertek LLC, Dispatch Express, Inc. and Premier CC LLC, A Qualtek Company, including compensatory damages, including backpay and frontpay, liquidated damages and attorneys' fees and costs in an amount to be determined at trial, and to grant other such relief as permitted by law.

**COUNT IX**
**VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT (775 ILCS 5/2-101 _et seq._)**
**AGAINST DEFENDANTS COURIER EXPRESS ONE, INC., PRECC, INC. AND DISPATCH EXPRESS INC.**
**GENDER/ DISABILITY/ AND/OR AGE DISCRIMINATION**
**(DISPARATE TREATMENT, HARASSMENT, HOSTILE WORK ENVIRONMENT)**

134.    Marski realleges and incorporates by reference paragraphs 1-70(h) above.

135.    Pursuant to the Illinois Human Rights Act, Marski is a member of a "protected class" because of her Protected Characteristics and because she suffered a physical impairment or impairments which substantially limited one or more life activities and is regarded as a disability by the Americans with Disabilities Act as set forth in paragraphs 11-14 above.

136.    Marski was meeting or exceeding Defendants' legitimate job expectations during her Employment Period.

137.    Defendants took one or more adverse employment actions against Marski during the period in which they were her employer or joint employer as set forth above, including in paragraphs 49(a)-(e), on the basis of one or more of her Protected Characteristics or, alternatively, because she had a Disability or Disabilities, including as follows:

a.      Courier fired Marski;

b.      Defendants subjected Marski to different and less favorable terms and conditions of employment than male employees, including as set forth in paragraphs 57(a)-(g) above;

c.      Defendants subjected Marski to a workplace environment which was subjectively and objectively offensive;

d.      Defendants subjected Marski to discrimination and harassment by Urso because of Marski's Protected Characteristics and/or her Disability or Disabilities;

e.      Defendants discriminatory and harassing conduct was severe and pervasive;

f.      Defendants knew or should have known about Urso's discriminatory conduct;

g.      Defendants unreasonably failed to take remedial action for Urso's discriminatory conduct.

138.    Defendants treated similarly situated employees outside of Marski's protected class more favorably than they treated Marski.

139.    Defendants' discriminatory conduct was intentional.

140.    Defendants' conduct was done with malice or reckless indifference to Marski's rights under federal and Illinois law.

141.    Marski was damaged by Defendants' discriminatory conduct in violation of the Illinois Human Rights Act. Marski's damages include, but are not limited to, her lost wages, damage to her career, lost benefits, future pecuniary losses, inconvenience, emotional and psychological harm and other harm.

**WHEREFORE**, Plaintiff Michelle Marski prays for judgment in her favor and against Defendant Courier Express One, Inc., PreCC, Inc. and Dispatch Express, Inc. and respectfully requests that the Court:

A.  Declare Defendants' conduct to violate the rights guaranteed to Michelle Marski under the Illinois Human Rights Act;

B.  Grant a permanent injunction restraining Defendants, their officers and employees and all persons in active concert or participation with them from engaging in any employment practice which unlawfully discriminates on the basis of gender, age or a disability

C.  Order Defendants to make Michelle Marski whole by providing the affirmative relief necessary to eradicate the effects of Defendants' unlawful practices, including frontpay;

D.  Grant Michelle Marski consequential, compensatory, punitive, nominal and any other damages, including backpay, additional backpay to account for the negative tax consequences of a lump-sum payment and damages for emotional pain, distress, and suffering and mental anguish, in an amount to be determined at trial;

E.  Grant Michelle Marski such equitable and injunctive relief that the Court may deem appropriate;

F.  Grant Michelle Marski her attorneys' fees, costs, pre-judgment and post-judgment interest and disbursements;

G.  Grant Michelle Marski such further relief as the Court deems necessary and proper.

## COUNT X
## VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT (775 ILCS 5/2-101 *et seq.*)
## AGAINST DEFENDANT COURIER EXPRESS ONE, INC.
## FAILURE TO ACCOMMODATE

142.  Plaintiff realleges and incorporates by reference paragraphs 1- 70(h) above.

143.  During her Employment Period, Marski had Fibromyalgia, vertigo and migraine headaches, which substantially limited one or more major life activities, including, but not limited

36

to, in the ways set forth in paragraphs 12-15 above, and which qualify as a disability or disabilities under the Americans with Disabilities Act (42 U.S.C.S. § 12102).

144.   Marski was qualified to perform the essential functions of her job with or without reasonable accommodations.

145.   Courier was aware of Marski's Disability or Disabilities and her workplace restrictions, including on February 5, 2019.

146.   Courier failed to provide reasonable workplace accommodations to Marski, including by denying her request for two-days' leave on February 5, 2019.

147.   Courier's discriminatory conduct was intentional.

148.   Courier's conduct was done with malice or reckless indifference to Marski's rights under federal and Illinois law.

149.   Marski was damaged by Courier's discriminatory conduct in violation of the Illinois Human Rights Act. Marski's damages include, but are not limited to, her lost wages, damage to her career, lost benefits, future pecuniary losses, inconvenience, embarrassment, emotional and psychological harm and other harm.

**WHEREFORE**, Plaintiff Michelle Marski prays for judgment in her favor and against Defendant Courier Express One, Inc. and respectfully requests that the Court:

A.   Declare Defendant's conduct to violate the rights guaranteed to Michelle Marski under the Illinois Human Rights Act;

B.   Grant a permanent injunction restraining Courier Express One, Inc., its officers and employees and all persons in active concert or participation with it from engaging in any employment practice which unlawfully discriminates on the basis of gender, age or a disability

C.      Order Defendant Courier Express One, Inc. to make Michelle Marski whole by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices, including frontpay;

D.      Grant Michelle Marski consequential, compensatory, punitive, nominal and any other damages, including backpay, additional backpay to account for the negative tax consequences of a lump-sum payment and damages for emotional pain, distress, and suffering and mental anguish, in an amount to be determined at trial;

E.      Grant Michelle Marski such equitable and injunctive relief that the Court may deem appropriate;

F.      Grant Michelle Marski her attorneys' fees, costs, pre-judgment and post-judgment interest and disbursements;

G.      Grant Michelle Marski such further relief as the Court deems necessary and proper.

## COUNT XI
## VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT (775 ILCS 5/2-101 *et seq.*)
## AGAINST DEFENDANT COURIER EXPRESS ONE, INC.
## GENDER/ AGE/ DISABILITY - RETALIATION

150.    Plaintiff realleges and incorporates by reference paragraphs 1- 70(h) above.

151.    Marski was performing her job in a satisfactory or above-satisfactory manner.

152.    Marski engaged in statutorily protected activity, including by complaining to Courier on one or more occasions about Urso's singling her out for less favorable treatment, by requesting reasonable accommodations for her disability in the form of two days' leave and by initiating legal proceedings against Courier to enforce her rights under federal and state antidiscrimination statutes ("Protected Activity").

153.    Courier retaliated against Marski because she engaged in Protected Activity by firing her and by engaging in one or more acts as set forth in paragraphs 59-60, 65 and 68-69 above.

154.    Courier treated Marski less favorably than one or more similarly situated employees who did not engage in statutorily protected activity.

155.    Courier's discriminatory conduct was intentional.

156.    Courier's conduct was done with malice or reckless indifference to Marski's rights under federal and Illinois law.

157.    Marski was damaged by Courier's discriminatory conduct in violation of the IHRA. Her damages include, but are not limited to, her lost wages, damage to her career, lost benefits, future pecuniary losses, inconvenience, emotional and psychological harm and other harm.

**WHEREFORE**, Plaintiff Michelle Marski prays for judgment in her favor and against Defendant Courier Express One, Inc. and respectfully requests that the Court:

A.    Declare Courier Express One, Inc.'s conduct to violate the rights guaranteed to Michelle Marski under the Illinois Human Rights Act;

B.    Grant a permanent injunction restraining Courier Express One, Inc., its officers and employees and all persons in active concert or participation with it from engaging in any employment practice which unlawfully discriminates on the basis of gender, age or a disability

C.    Order Defendant to make Michelle Marski whole by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices, including frontpay;

D.    Grant Michelle Marski consequential, compensatory, punitive, nominal and any other damages, including backpay, additional backpay to account for the negative tax

39

consequences of a lump-sum payment and damages for emotional pain, distress, and suffering and mental anguish, in an amount to be determined at trial;

      E.     Grant Michelle Marski such equitable and injunctive relief that the Court may deem appropriate;

      F.     Grant Michelle Marski her attorneys' fees, costs, pre-judgment and post-judgment interest and disbursements;

      G.     Grant Michelle Marski such further relief as the Court deems necessary and proper.

**COUNT XII**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**AGAINST DEFENDANTS COURIER EXPRESS ONE, INC.,**
**PRECC, INC., PREMIER CC LLC, A QUALTEK COMPANY,**
**DISPATCH EXPRESS INC., AND VERTEK LLC AND AGAINST ANTHONY**
**URSO, INDIVIDUALLY**

158.     Plaintiff realleges and incorporates by reference paragraphs 1-70(h) above.

159.     Defendants subjected Marski to extreme and outrageous conduct.

160.     Defendants intended that their conduct inflict severe emotional distress on Marski or recklessly or consciously disregarded the high probability that their conduct would cause Marski severe emotional distress.

161.     Defendants' conduct caused Marski severe or extreme emotional distress.

**WHEREFORE**, Plaintiff Michelle Marski prays that the Court enter judgment in her favor and against Defendants including for compensatory damages and punitive damages in an amount to be determined at trial and to grant other such relief as permitted by law.

## COUNT XIII
## VIOLATION OF THE ILLINOIS WAGE PAYMENT COLLECTION ACT
## (820 ILCS 115/1 *et seq.*)
## AGAINST DEFENDANTS COURIER EXPRESS ONE, INC. AND
## PRECC, INC.

162.    Plaintiff realleges and incorporates by reference paragraphs 1-70(h) above.

163.    During Marski's Employment Period, Marski routinely worked over 40 hours per week.

164.    Defendants failed to pay Marski her wages for all hours which she worked for Defendants at the time of her separation or with her next regularly scheduled paycheck after her separation from Courier.

165.    During Plaintiff's Employment Period, Courier's Employee Handbook contained a paid time off policy, pursuant to which employees were granted time off with pay.

166.    Defendants PreCC f/k/a Premier CC, Inc. and Courier affirmatively represented to Marski that she was entitled to 80 hours of PTO in 2018 and 80 hours of PTO in 2019.

167.    Marski was entitled to 80 hours of PTO in 2018 and 80 hours of PTO in 2019.

168.    To date, Defendant has failed to pay Marski for all paid time off owed to Plaintiff for the years 2018 and 2019 pursuant to Defendant's policy and practice in the amount of 120 hours for a total of approximately $3,600.00.

169.    Marski worked on February 3, 4, and 5. Defendant failed to fully pay Marski for her wages earned from February 3-5 and owes her approximately $400.00 for wages from February 3-5.

**WHEREFORE**, Plaintiff Michelle Marski prays that the Court enter judgment in her favor and against Defendants Courier Express One, Inc. and PreCC, Inc., including compensatory damages, including unpaid paid time off and unpaid wages, interest at the rate of 2% of the

underpayment per month, and attorney's fees and costs in an amount to be determined at trial, and to grant other such relief as permitted by law.

**COUNT XIV**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**(29 U.S.C. § 201 *et. seq.*)**
**AGAINST DEFENDANTS COURIER EXPRESS ONE, INC.,**
**PRECC, INC., PREMIER CC LLC, A QUALTEK COMPANY,**
**DISPATCH EXPRESS INC., VERTEK LLC AND ANTHONY URSO,**
**INDIVIDUALLY**

170. Plaintiff realleges and incorporates by reference paragraphs 1-70(h) above.

171. The Fair Labor Standards Act ("FLSA") defines employer broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee…" 29 U.S.C. §203(d).

172. Defendants Courier, PreCC, Premier CC LLC, Dispatch and Vertek are or were subject to the wage requirements of the FLSA because Defendants are or were employers engaged in interstate commerce and/or in the production of goods for commerce under 29 U.S.C. §203(d) during all relevant times.

173. During all relevant times, Marski was a covered employee entitled to the FLSA's protections. *See* 29 U.S.C. §203(e).

174. Marski was not exempt from the requirements of the FLSA.

175. Marski is entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. §207(a)(1).

176. Defendants, pursuant to their policies and practices, willfully failed and refused to pay overtime compensation to Marski for her hours worked in excess of 40 per week by misclassifying Marski as exempt from the FLSA's overtime requirements during the periods in which Defendants were Marski's employer or joint employer as set forth above, including in paragraphs 49(a)-(e).

42

177.   Defendant Urso is individually liable under the FLSA for Urso's Companies' violations of the FLSA, including because he established the companies' employment policies, including the companies' pay policies; was Marski's manager and supervisor and exercised control over her work; played an important role in making personnel decisions for Defendants and had the authority to hire and fire employees; on information and belief, had a significant ownership interest in each Defendant; exercised day-to-day control of operations for Defendants; supervised and controlled Marski's work schedule and conditions of employment; and made pay decisions. Defendant Urso is individually liable for Premier CC LLC's violations of the FLSA, including because, on information and belief, Urso agreed with Premier CC LLC as part of the Transaction that Marski would work for Premier CC LLC from July through August 2018. Urso was aware that Marski was working 70 or more hours per week in the period of approximately July through August 2018.

178.   Urso willfully failed to compensate Marski at a rate of one and one-half (1.5) times her regular hourly wage for hours worked in excess of forty (40) per week, in violation of 29 U.S.C. §207(a)(1).

**WHEREFORE**, Plaintiff Michelle Marski prays that the Court award her the following relief against Defendants Courier Express One, Inc. PreCC, Inc., Vertek LLC, Dispatch Express, Inc. and Premier CC LLC, A Qualtek Company and against Anthony Urso, jointly and severally with the foregoing Defendants, as follows:

A.   Back pay damages (including overtime compensation and unpaid wages) equal to the amount of all unpaid wages for the three (3) years preceding the filing of this Complaint, according to the applicable statute of limitations for willful violations of the FLSA;

B.      Prejudgment interest with respect to the amount of unpaid overtime compensation;

C.      Liquidated damages in an amount equal to the amount of unpaid overtime compensation found due pursuant to 29 U.S.C. §216(b);

D.      Litigation costs, expenses and attorney's fees to the fullest extent permitted under the law;

E.      Entering an injunction precluding Defendants from violation the Fair Labor Standards Act, 29 U.S.C. §201, *et. seq.* and

F.      Such other relief as the Court deems just and proper.

### COUNT XV
### VIOLATION OF THE ILLINOIS MINIMUM WAGE LAW (820 ILCS 105/1, *et. seq.*)

### AGAINST DEFENDANTS COURIER EXPRESS ONE, INC., PRECC, INC., PREMIER CC LLC, A QUALTEK COMPANY, DISPATCH EXPRESS INC., VERTEK LLC AND ANTHONY URSO, INDIVIDUALLY

179.    Plaintiff Michelle Marski realleges and incorporates by reference paragraphs 1-70(h) above.

180.    This Count arises from Defendants' violation of the Illinois Minimum Wage Law ("IMWL"), 820 ILCS §105/1, *et. seq.*, for Defendants' failure to pay Marski at the overtime rate for all hours worked in excess of forty (40) per workweek.

181.    This Court has supplemental jurisdiction over the matters alleged herein pursuant to 28 U.S.C. §1367.

182.    At all relevant times herein, Defendants PreCC, Inc. f/k/a Premier CC, Inc. and Courier Express One, Inc. were an "employer" as defined in the IMWL. 820 ILCS 105/3(c).

183. During the time periods set forth in paragraph 49(a)-(e) above, Defendants Vertek LLC, Premier CC LLC, a Qualtek Company and Dispatch Express, Inc. were Marski's joint employer for purposes of the IMWL.

184. At all relevant times herein, Marski was an "employee" within the meaning of the IMWL.

185. Pursuant to 820 ILCS 105/4a, for all weeks during which Marski worked in excess of forty (40) hours, Marski was entitled to be compensated at the overtime rate of one and one-half (1.5) times her normal hourly rate of pay for hours worked in excess of forty (40) hours per week.

186. Defendants willfully, repeatedly or with reckless disregard violated the IMWL by failing to compensate Marski at the overtime rate for all hours worked in excess of forty (40) hours per week.

187. Defendant Urso is individually liable under the IMWL for Urso's Companies' violations of the IMWL, including because he established the companies' employment policies, including the companies' pay policies; was Marski's manager and supervisor and exercised control over her work; played an important role in making personnel decisions for Defendants and had the authority to hire and fire employees; on information and belief, had a significant ownership interest in each Defendant; exercised day-to-day control of operations for Defendants; supervised and controlled Marski's work schedule and conditions of employment; and made pay decisions. Defendant Urso is individually liable for Premier CC LLC's violations of the IMWL, including because, on information and belief, Urso agreed with Premier CC LLC as part of the Transaction that Marski would work for Premier CC LLC from July through August 2018. Urso was aware

that Marski was working 70 or more hours per week in the period of approximately July through August 2018.

188.    Urso willfully, repeatedly or with reckless disregard failed to compensate Marski at a rate of one and one-half (1.5) times her regular hourly wage for hours worked in excess of forty (40) per week, in violation of the IMWL.

189.    Pursuant to 820 ILCS 105/12(a), Marski is entitled to recover unpaid wages for three years prior to the filing of this suit, plus punitive damages in the amount of two percent (2%) per month of the amount of the underpayments.

**WHEREFORE**, Plaintiff Michelle Marski prays that the Court enter judgment in her favor and against Defendants Courier Express One, Inc., PreCC, Inc., and Premier CC LLC, A Qualtek Company, Vertek LLC and Dispatch Express, Inc. and against Anthony Urso, and jointly and severally with Defendants Courier Express One, Inc., PreCC, Inc., Premier CC LLC, A Qualtek Company, Vertek LLC and Dispatch Express, Inc. as follows:

A.    A judgment in an amount equal to all unpaid backpay owed to Marski pursuant to the Illinois Minimum Wage Law;

B.    Prejudgment interest on the back pay in accordance with 815 ILCS §205/2;

C.    Statutory damages pursuant to the formula set forth in 820 ILCS 105/12(a);

D.    Reasonable attorney's fees and costs incurred in filing this action;

E.    An injunction precluding Defendants from violating the Illinois Minimum Wage Law, 820 ILCS §105/1 *et seq.* and

F.    Such other relief as the Court deems just and proper.

**COUNT XVI**
**VIOLATION OF ERISA, 29 U.S.C. §1166**
**ENFORCEABLE PURSUANT TO ERISA 29 U.S.C. §1132**
**AGAINST COURIER EXPRESS ONE, INC. AND PRECC, INC.**

190.    Plaintiff Michelle Marski realleges and incorporates by reference paragraphs 1-70(h) above.

191.    Defendants Courier and/or PreCC had a duty to provide Marski a proper COBRA Notice of Rights in a timely fashion.

192.    Defendants Courier and/or PreCC breached its/their duty to provide a timely COBRA Notice of Rights to Marski.

193.    Defendants Courier and/or PreCC had a duty to notify Blue Cross Blue Shield of Illinois of Marski's termination.

194.    Defendants Courier and/or PreCC breached its/ their duty to notify Blue Cross Blue Shield of Illinois of Marski's termination.

195.    Defendants Courier and/or Defendant PreCC, Inc. is/are liable for administrative penalties for these breaches of duties.

196.    Defendants Courier and/or Defendant PRECC, Inc. is/are liable for equitable damages for these breaches of duties.

197.    Defendants' failure to provide timely notices to Marski and/or Blue Cross Blue Shield was willful, in bad faith or the result of Defendants' gross negligence.

198.    Defendants' failure to provide timely notices to Marski and/or Blue Cross Blue Shield of Illinois damaged Marski, including by impairing and delaying Marski's ability to obtain affordable replacement health insurance for herself and her covered beneficiaries and by causing Marski emotional pain and suffering, stress and mental anguish.

47

**WHEREFORE**, Plaintiff Michelle Marski pray that the Court enter judgment in her favor against Courier Express One, Inc. and/or PRECC, Inc. as follows:

A.      Grant any and all monetary relief available to Marski including without limitation administrative penalties pursuant to ERISA:

B.      Grant any and all equitable relief available to Marski as permitted by ERISA;

C.      Enter an order awarding Marski her reasonable attorney's fees and costs incurred as a result of these ERISA violations; and

D.      Award any other relief as the Court deems just and proper.

**COUNT XVII**
**VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT**
**(29 U.S.C. §2601 *et. seq.*)**
**AGAINST DEFENDANTS COURIER EXPRESS ONE, INC., PRECC, INC.,**
**VERTEK LLC and ANTHONY URSO**
**FMLA INTERFERENCE AND RETALIATION**

199.      Marski realleges and incorporates by reference paragraphs 1-70(h) above.

200.      Defendants PreCC, Inc. and Courier are equitably estopped from denying Marski's entitlement to FMLA leave because they affirmatively represented to Marski that she was eligible for FMLA leave.

201.      Because Defendants affirmatively represented to Marski that she was eligible for FMLA leave, she was entitled to take leave under the FMLA.

202.      Marski provided sufficient notice of her intent to take leave.

203.      Defendants Courier and PreCC denied Marski's FMLA benefits to which she was entitled, including by requiring Marski to work from home as a condition of taking leave and by interfering with Marski's use of her pre-approved FMLA time as set forth in paragraphs 24-33 above.

204.     While Defendant Vertek was Marski's joint employer as set forth in paragraph 53 above, Vertek interefered with Marski's FMLA leave and denied her FMLA benefits to which she was entitled.

205.     Defendants Courier and Urso retaliated against Marski because of her request for FMLA leave.

206.     Marski relied on Defendants' representations to her detriment. For example, after Marski submitted a request for intermittent FMLA leave in February 2019 and a request for two days' medical leave from February 5-6 to Defenant Urso, Urso and Courier terminated Marski's employment.

207.     Defendant Urso is individually liable under the FMLA for PreCC's, Courier's and Vertek's violations of the FMLA, including because he established the companies' employment policies, was Marski's manager and supervisor and exercised control over her work; played an important role in making personnel decisions for Defendants and had the authority to hire and fire employees; on information and belief, had a significant ownership interest in each Defendant; exercised day-to-day control of operations for Defendants; supervised and controlled Marski's work schedule and conditions of employment; and because he individually interfered with Marski's FMLA leave as set forth in paragraphs 24-33 above.

208.     Defendants knowingly or willfully denied Marski the FMLA benefits to which she was entitled.

**WHEREFORE**, Plaintiff Michelle Marski pray that the Court enter judgment in her favor against Courier Express One, Inc, PreCC, Inc., Vertek LLC and Anthony Urso, individually,. as follows:

49

A. Declare Defendants' conduct to violate the rights guaranteed to Michelle Marski under the Family and Medical Leave Act;

B.     Order Defendants to make Michelle Marski whole by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices, including frontpay;

C.     Grant Michelle Marski consequential, compensatory, liquidated, nominal and any other damages, including backpay, additional backpay to account for the negative tax consequences of a lump-sum payment and damages for emotional pain, distress, and suffering and mental anguish, in an amount to be determined at trial;

D.     Grant Michelle Marski such equitable and injunctive relief that the Court may deem appropriate;

E.     Grant Michelle Marski her attorneys' fees, costs, pre-judgment and post-judgment interest and disbursements;

F.     Grant Michelle Marski such further relief as the Court deems necessary and proper.

## COUNT XVIII
## DEFAMATION
## AGAINST ANTHONY URSO

209.     Marski realleges and incorporates by reference paragraphs 1-70(h) above.

210.     Urso's statements to Marski's former coworkers in 2019, including as set forth in paragraph 68(c) above, constitute defamation *per se*. They were statements indicating an inability to perform her job duties and a want of integrity. Further, the statements prejudiced Marski and indicated Marski's lack of ability in her trade or profession.

211.     Urso's statements to Marski's former coworkers that Marski quit and that she is "mean and hateful" were false, made with malice, and he lacked any reasonable basis for

believing them to be true. In the alternative, the statements were made with reckless disregard for the truth.

212.     As a proximate cause and result of Urso's conduct, Marski has suffered and continues to suffer economic loss, emotional distress, personal humiliation and loss of her good reputation in the profession and community.

**WHEREFORE**, Plaintiff Michelle Marski pray that the Court enter judgment in her favor against Anthony Urso, individually, and award Marski compensatory damages, punitive damages and for such other relief the Court deems equitable and just.

## DEMAND FOR JURY TRIAL

213.     Plaintiff Michelle Marski demands trial by jury on all counts and issues so triable.

Respectfully Submitted,

/s/     Stacey Vucko
STACEY VUCKO
Attorney for Plaintiff Michelle Marski

Dated: June 20, 2019

STACEY B. VUCKO
VUCKO LAW LLP
2208 Midwest Rd., Suite 104
Oak Brook, IL 60523
312-522-2517
svucko@vuckolaw.com